**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LIEUTENANT (JUNIOR GRADE) | ) | |
| JAMES HAMRICK | ) | |
| 318 Caravel Dr | ) | |
| Bear, DE 19701 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-????. |
| | ) | |
| THE HONORABLE HUNG CAO, | ) | |
| in his official capacity as | ) | |
| Acting SECRETARY OF THE NAVY, | ) | |
| 1000 Navy Pentagon, | ) | |
| Washington, DC 20350 | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

### *Introduction*

No good deed goes unpunished. Lieutenant Junior Grade ("LTJG") James Hamrick served honorably in the United States Naval Reserve for many years, and was selected for promotion to Lieutenant (O-3). LTJG Hamrick and his wife also adopted a young Ukrainian girl, Nadia, into their home, providing her with financial and emotional stability after she had suffered years of physical and emotional abuse.

LTJG Hamrick was harshly punished for both of these good deeds. Nadia sexually assaulted LTJG Hamrick, then lied and stated the pair had a consensual sexual relationship, so that she could avoid mental health treatment. The Navy which LTJG Hamrick had served for so long decided that even though Nadia's allegations were determined to be unfounded by both a Naval Criminal Investigative Services investigation and by a Board of Inquiry, LTJG Hamrick would be denied his promotion to Lieutenant (O-3) regardless.

Seeking to correct this injustice, LTJG Hamrick applied to the Board for Correction of Naval Records ("BCNR" or "Board"), requesting promotion to Lieutenant (O-3). The BCNR determined that the allegations made by Nadia against LTJG Hamrick had been determined to be unfounded in multiple forums and investigations. But the BCNR also concluded, incongruously, that there was credible evidence that LTJG Hamrick had engaged in a consensual sexual relationship with Nadia. The BCNR accordingly denied LTJG Hamrick any relief.

Now, LTJG Hamrick brings suit in this honorable Court challenging the BCNR's decision. For the reasons which follow, the BCNR reached conclusions unsupported by the evidence of record and failed to correct injustice clearly present in the record. This Court should hold that the BCNR's denial of LTJG Hamrick's application was arbitrary and capricious, and remand to the BCNR for a new review which complies with all applicable laws and regulations.

### Jurisdiction

1. This Court has jurisdiction under 28 U.S.C. § 1331 and under 5 U.S.C. § 706 (2)(A), which together provide for redress in the district courts based upon agency decisions that are arbitrary and capricious and contrary to law.

### Venue

2. Venue is proper under 28 U.S.C. § 1391(e)(1).

### Parties

3. Plaintiff, LTJG Hamrick, is a citizen of the United States who resides at the address listed in the caption. At all relevant times during the conduct that gave rise to this action, Plaintiff was residing in the United States.

4. Defendant, the Honorable Hung Cao, is named in his official capacity as the acting Secretary of the Navy. The Secretary of the Navy oversees the BCNR, which acts in the Secretary's

name and makes recommendations to the Secretary as to whether applications by past and present members of the United States Navy should be granted or denied. *See* 10 U.S.C. § 1552(a)(1).

### *Timeliness*

5.      LTJG Hamrick applied to the BCNR on August 23, 2023.

6.      The BCNR decided LTJG Hamrick's application on or about December 11, 2024, declining to grant him any corrective relief.

7.      As such, this action is timely filed. *See* 28 U.S.C. § 2401(a); *Rempfer v. U.S. Dept. of Air Force Bd. for Correction of Military Records,* 538 F.Supp.2d 200, 206 (D.D.C. 2008).

### *Statement of the Facts*

8.      In 1996, following graduation from high school, LTJG Hamrick enlisted in the United States Navy. He remained on active duty until 2003 when he joined the Naval Reserves.

9.      LTJG Hamrick rapidly rose through the ranks of the Aviation Maintenance Field and was selected for Chief in 2011. He applied for and was selected for Commission as a Naval Officer, commissioning in 2014 and serving to this very day.

10.     Throughout his decorated Naval career, LTJG Hamrick has been awarded the Armed Forces Expeditionary Medal twice, the Navy Unit Commendation, the Navy E Ribbon 5 times, the Good Conduct Medal three times, the Navy/Marine Corps Achievement Medal three times, the Meritorious Unit Commendation, the Naval Reserve Meritorious Service three times, and the Navy/Marine Corps Commendation Medal three times.

11.     In 2011, LTJG Hamrick and his wife, Pamela Hamrick, decided to open their home to Nadia, an 11 year old orphan from Ukraine.

12. Unbeknownst to LTJG Hamrick and his wife, Nadia suffered from severe mental illness caused by the extreme physical and emotional abuse that she endured for 10 years in a Ukrainian orphanage.

13. While raising Nadia, LTJG Hamrick and Mrs. Hamrick, along with their three other children, experienced a multitude of behavioral issues, false allegations, continuous aggressive and threatening behaviors, theft of personal property, and damage to their home at Nadia's hands.

14. Nadia's problems were caused by her many mental health issues, including Post Traumatic Stress Disorder, Premenstrual Dysphoric Disorder, Reactive Attachment Disorder, Bipolar Disorder, and Borderline Personality Disorder with antisocial traits.

15. Nadia also suffered from abandonment issues, and her past history as a victim of sexual abuse led her to exhibit inappropriately sexualized behavior.

16. During her adolescence, Nadia had numerous in ·and outpatient long term psychiatric hospitalizations and treatment.

17. On one occasion, LTJG Hamrick had Nadia removed from his home by the Virginia Beach Police Department ("VBPD") due to her threatening behaviors and several runaway attempts. Slie was placed in a two-week program for runaway girls, only to get kicked out due to self-harm.

18. Later, Nadia assaulted Mrs. Hamrick and was placed under diversion by the Virginia Beach court system.

19. On another occasion, LTJG Hamrick and Mrs. Hamrick denied Nadia access to their bedroom, so she picked the lock, and threatened to harm Mrs. Hamrick while being removed. Once removed, Nadia again attempted to enter the room, this time by kicking the bedroom door open, splitting the door in half and splintering the door frame in the process.

20. Following this disturbing incident, LTJG Hamrick and Mrs. Hamrick slept with their dresser propped up in front of the bedroom door for the rest of the time Nadia lived with them, for fear of any other potential violent nocturnal intrusions.

21. Nadia also exhibited a frightening capacity for self-harm. She took a plastic spork while at school and carved a classmate's name into her arm.

22. Nadia's mental delusions were another motivating factor in her self-harm. At age 16, Nadia became convinced, despite the absence of any supporting evidence, that she was pregnant, and attempted to cut the non-existent baby out of her stomach with a razor blade.

23. Following this incident, Nadia was placed in an in-patient program at Kempsville Center for Behavioral Health ("KBH"), at 860 Kempsville Rd, Norfolk, Virginia, for nine months.

24. By June 2017, Tricare, a health care program of the United States Department of Defense Military Health System which had been paying for Nadia's inpatient stay pursuant to her status as a eligible dependent of a member of the U.S. armed forces, i.e., LTJG Hamrick, decided that they would no longer pay for inpatient treatment for Nadia.

25. Mrs. Hamrick attempted to get the decision reversed. It was a bad time for Nadia to return home, as LTJG Hamrick was preparing to report to a new duty station at Joint Base McGuire-Dix-Lakehurst ("JBMDL"), in New Hanover Township, New Jersey, hundreds of miles from the family's home outside of Norfolk, Virginia.

26. However, Tricare did not amend their decision.

27. Mrs. Hamrick's fears proved well-founded. Nadia's behavior was worse than ever, and she struggled throughout the summer of 2017.

28. On August 21, 2027, Nadia sexually assaulted LTJG Hamrick.

29.     That night, NADIA came out of her room while both she and LTJG Hamrick were wearing pajamas and jumped on LTJG Hamrick, squeezing him and telling him, "I want you inside of me." Nadia also ordered LTJG Hamrick to shut up and began dry humping him when he protested. After a few minutes, Nadia stopped and began to cry.

30.     A week later, upon her return from summer camp in late August, Nadia informed Mrs. Hamrick that she had sexually assaulted LTJG Hamrick.

31.     LTJG Hamrick and Mrs. Hamrick immediately took Nadia to KBH. KBH refused to admit Nadia, citing her lack of suicidal intent. So LTJG Hamrick and Mrs. Hamrick took Nadia to Naval Medical Center Portsmouth.

32.     Nadia was admitted to Naval Medical Center Portsmouth and spent the night there.

33.     On the morning of August 27, 2017, Nadia was returned to KBH by LTJG Hamrick and Mrs. Hamrick. There she was involuntarily committed pursuant to a temporary detention order following her sexual assault of LTJG Hamrick.

34.     LTJG Hamrick provided numerous mental health records and other evidence reflecting that his adopted daughter exhibited extremely disturbed, aggressive, self-destructive, and sexualized behavior.

35.     LTJG Hamrick reported in Nadia's treatment intake form that on August 21, 2027, Nadia came out of her room while both were wearing pajamas and "jumped him, squeezed him, telling him, 'I want you inside of me.'" He further stated that she told him to "Just shut up" and began dry humping him when he protested. This went on for a few minutes before she began crying.

36.     That same day, August 27, 2017, Nadia was evaluated by an attending physician at KBH.

37.     According to the physician's notes, Nadia stated she became sexually obsessed with LTJG Hamrick and said, "l was so horny, so I did what I did. If I wanted his penis, I would have had it long ago."

38.     The physician also noted Nadia had a history of abuse or neglect prior to her adoption by LTJG Hamrick and Mrs. Hamrick.

39.     On August 28, 2017, LTJG Hamrick sought medical treatment for unrelated ailments. During this visit, he reported that Nadia had sexually assaulted him, and expressed concern over possible exposure to sexually transmitted diseases ("STD").

40.     On or about September 6, 2017, the Norfolk Juvenile Court committed Nadia to a mental institution, Harbor Point Behavioral Health Center ("HP BHC"), until she reached the age of 18.

41.     During the hearing, Nadia again confirmed under oath that she had sexually assaulted LTJG Hamrick.

42.     On September 25, 2017, LTJG Hamrick received mental health treatment at JBMDL related to the sexual assault by Nadia.

43.     On October 5, 2017, Nadia stated – for the first time – that she and LTJG Hamrick had consensual sexual relations.

44.     Nadia made this accusation in a bid to secure her release from HP BHC.

45.     After learning of his daughter's accusation on October 5, 2017, following a phone call with Mrs. Hamrick, LTJG Hamrick again sought mental health treatment at JBMDL.

46.     LTJG Hamrick's treating physician noted that LTJG Hamrick stated that Nadia had committed sexual harassment against LTJG Hamrick over the previous two years, and had also "rap[ed]" LTJG Hamrick.

47. But the physician also noted, in diametric opposition to his previous note that LTJG Hamrick stated that he had been "rap[ed]", that LTJG Hamrick "acknowledged voluntary participation" in intercourse with Nadia.

48. LTJG Hamrick denied having reported sexual intercourse or acknowledging voluntary participation. Instead, LTJG Hamrick reported that Nadia tried to have sex with him.

49. Another note on October 6, 2017, from another mental health institution, Hampton Counseling Center in Westampton Township, New Jersey, also states that LTJG Hamrick was "raped" by Nadia, without any indication of voluntary participation.

50. That same note stated that Nadia had been "assaulting" LTJG Hamrick over the past two years, and that the rape occurred on August 21, 2017.

51. LTJG Hamrick's treating physician at JBMDL was a mandatory reporter. As such, he reported this information to the JBMDL Family Advocacy Program ("FAP").

52. LTJG Hamrick's treating physician also referred him to outpatient treatment at Hampton Counseling Center.

53. LTJG Hamrick received treatment at the Hampton Counseling Center from October 6, 2017, until November 2, 2017. During the course of his treatment at Hampton Counseling Center, LTJG Hamrick was diagnosed with anxiety (unspecified).

54. In a treatment note from Hampton Counseling Center dated November 2, 2017, LTJG Hamrick again indicated that he had been molested by Nadia over the course of two years.

55. While LTJG Hamrick was seeking treatment, the VBPD had begun an investigation into Nadia's allegations that she and LTJG Hamrick had maintained a consensual sexual relationship.

56.     Nadia alleged that she had engaged in oral sex with LTJG Hamrick on multiple occasions in both Virginia and Delaware.

57.     The Naval Criminal Investigative Service ("NCIS") also launched an investigation to determine if LTJG Hamrick had violated any articles of the Uniform Code of Military Justice ("UCMJ").

58.     In the course of the investigation, NCIS recorded that Nadia stated that she "initiated the whole thing" and "claimed she engaged in consensual sexual contact with LTJG Hamrick. She stated that she and LTJG Hamrick had an ongoing sexual relationship from June 22, 2017, through August 22, 2017, involving multiple oral sexual encounters."

59.     NCIS also recorded that LTJG Hamrick stated to his medical provider that the sexual encounters were "consensual."

60.     NCIS stated that because LTJG Hamrick's daughter was 17 at the time of the alleged encounter, "no UCMJ Article 120 ["Rape and sexual assault generally"] charges apply."

61.     NCIS further found that an Article 133, UCMJ ["Conduct Unbecoming an Officer and Gentleman"], charge was unfounded—presumably because NCIS could not substantiate that any sexual activity between Nadia and LTJG Hamrick had taken place.

62.     By September 2018, Viriginia Beach Child Protective Services ("CPS") reached a similar conclusion, determining that the allegations of child abuse and neglect against LTJG Hamrick were unfounded, and as such closed their investigation.

63.     No charges, either by the Navy for violation of the UCMJ, or by civil authorities under the laws of the state of Virginia, were ever brought against LTJG Hamrick.

64.     However, by memorandum dated September 24 2018, LTJG Hamrick was notified that the Secretary of the Navy was withholding his pending promotion to Lieutenant (O-3)

pursuant to the recommendation of the Fiscal Year 2019 United States Naval Reserve ("USNR") Lieutenant ("LT") All Fully Qualified Officer List ("AFQOL"), then scheduled for October 1, 2018, based upon the NCIS investigation.

65. By memorandum dated October 31, 2018, LTJG Hamrick provided a statement in response to the notice that his promotion was being withheld.

66. LTJG Hamrick stated that he had previously not been aware of the NCIS investigation, and that his commander had informed him that the investigation was closed with no adverse administrative actions or charges.

67. LTJG Hamrick further stated that he was worthy of the promotion and expressed his expectation that the promotion hold would be corrected quickly so that he could continue his service as a naval officer.

68. On May 13, 2019, NCIS officially closed their investigation of the allegations against LTJG Hamrick after consultation with the servicing Regional Legal Services Office.

69. LTJG Hamrick's commander decided that no administrative or disciplinary action was warranted.

70. By memorandum dated May 28, 2019, LTJG Hamrick's squadron commander endorsed LTJG Hamrick's response to the withholding of his promotion to Lieutenant, providing his strongest personal recommendation for LTJG Hamrick's promotion.

71. The squadron commander described LTJG Hamrick as "one [of] the finest Mustangs I have had the pleasure of serving with," and stated that the investigation revealed no wrongdoing.

72. In another memorandum dated March 11, 2020, LTJG Hamrick provided a detailed description of the emotional suffering caused to him and his family by Nadia. LTJG Hamrick stated

that he has served with honor and dignity, and that the restoration of his promotion would allow him to exemplify the highest standards of service to the nation.

73.    Nevertheless, by memorandum dated January 22, 2021, the Commander, Naval Personnel Command, required LTJG Hamrick to show cause for retention in the Navy.

74.    A Board of Inquiry ("BOI") convened on April 22, 2021, considered the following charges against LTJG Hamrick:

- "Sexual Misconduct or Perversion, Other illegal sexual behavior, including incest illegal under state law as set forth with more particulars in NCIS Investigation # 20OCTl7-NEEA-0140-8XNA dated 13 May 19."

- "Violation of UCMJ Article 133 (Conduct unbecoming an officer)."

- "Violation of UCMJ Article 134 (Extramarital sexual contact)."

75.    The BOI unanimously found that these allegations against LTJG Hamrick were unsubstantiated and therefore recommended his retention in the Navy.

76.    But by memorandum dated February 14, 2023, the Chief of Naval Operations ("CNO") recommended that the Secretary of the Navy remove LTJG Hamrick's name from the FY 2019 USNR LT AFQOL.

77.    The CNO's memorandum included all of the administrative proceedings which exonerated LTJG Hamrick, including the results of the BOI and the NCIS investigative findings. But the CNO still opined that there was credible evidence that LTJG Hamrick engaged in an inappropriate sexual relationship with Nadia, and that this called LTJG Hamrick's moral fitness for promotion into question.

78.    The Secretary of the Navy approved the CNO's recommendation on April 6, 2023. LTJG Hamrick was removed from the FY 2019 USNR LT AFQOL.

79.    LTJG Hamrick provided a statement in response to his removal from the FY 2019 USNR LT AFQOL on May 10, 2023. LTJG Hamrick continued to maintain that he did not engage

11

in any sexual activity with Nadia and emphasized the evidence of Nadia's extreme mental health issues. In addition, LTJG Hamrick cited letters from Nadia and her admissions to her treatment team indicating that she was at fault.

80.    LTJG Hamrick applied to the BCNR on August 23, 2023. In his application, LTJG Hamrick stressed that the information relied upon by the Secretary of the Navy in removing him from the FY 2019 USNR LT AFQOL was inaccurate, because, among other things, the information contained in the NCIS report was inaccurate, and there was no credible evidence that he engaged in an inappropriate sexual relationship with Nadia.

81.    The BCNR denied LTJG Hamrick's application on December 11, 2024.

82.    The BCNR stated that it "did not find the description of the allegation made by [LTJG Hamrick's] daughter to NCIS as a "sexual assault" to be inaccurate as his daughter reported on-going sexual activity dating back two years. This would encompass a period when his daughter was under the age of consent, so the characterization of the allegation as a "sexual assault" was accurate."

83.    The BCNR stated that it also found the "accuracy of NCIS's description of the allegation made by [LTJG Hamrick's] daughter to be largely irrelevant because he was not removed from the FY 2019 USNR LT AFQOL due to a substantiated sexual assault. The [Secretary of the Navy] was fully informed that the allegations made by [LTJG Hamrick's] daughter had been unfounded through multiple forums and investigations."

84.    "Rather," the BCNR continued, LTJG Hamrick "was removed from the FY 2019 USNR LT AFQOL because there was "credible evidence that (he) engaged in an inappropriate sexual relationship with his adopted daughter." This statement was accurate; there was, in fact, credible evidence that [LTJG Hamrick] engaged in such a relationship."

12

85.     The BCNR cited five reasons to support its belief that there was credible evidence LTJG Hamrick engaged in a sexual relationship with Nadia.

86.     First, the BCNR cited Nadia's allegations as evidence of the relationship.

87.     Second, the BCNR cited the comment of LTJG Hamrick's treating physician at JBMDL, who recorded that LTJG Hamrick "acknowledged voluntary participation" in such sexual activity with Nadia.

88.     On this point the BCNR "acknowledge[d] that [LTJG Hamrick] denies having acknowledged such participation, but [LTJG Hamrick] has provided no evidence other than his denial that his words were inaccurately [sic; the BCNR meant to write "accurately"] recorded by his mental health provider."

89.     The BCNR failed to mention that LTJG Hamrick's treating physician at JBMDL also recorded that LTJG Hamrick stated that he had been "raped" by Nadia, or that LTJG Hamrick made similar comments regarding the non-consensual nature of his interactions with Nadia to another healthcare provider, Hampton Counseling Center, on October 6, 2017, and November 2, 2017.

90.     Third, the BCNR cited LTJG Hamrick's treating physician at JBMDL's filing of a report with JBMDL FAP as "credible evidence tending to corroborate" Nadia's allegations.

91.     Fourth, the BCNR referenced that LTJG Hamrick "did not report the sexual assault allegation when it happened. It was only after his daughter revealed what had happened nearly a week after the event that [LTJG Hamrick] determined that she needed to be institutionalized and he sought mental health treatment for the assault."

92.     In support of this point, the BCNR stated that Nadia's sexual assault of LTJG Hamrick "reportedly occurred on 21 August 2017, but [LTJG Hamrick] did not immediately report

13

it or reveal it to his spouse. It was revealed only when the daughter revealed it while attending a church camp, which resulted in the filing of a report with Child Protective Services (CPS)."

93. Fifth, and finally, the BCNR noted that "in disputing the medical report that recorded his claim that his daughter actually raped him, [LTJG Hamrick] insisted that no sexual intercourse occurred between them. However, when he sought medical treatment on 28 August 2017, he expressed concern over the possibility of STD exposure. It is not clear why had would have had such a concern a week after the incident if no sexual intercourse occurred, which reasonably raises doubts regarding his credibility."

94. For these five reasons, the BCNR determined that credible evidence existed that LTJG Hamrick had a sexual relationship with Nadia.

95. The BCNR accordingly denied his application.

### *Plaintiff's First Claim*

**Violation of 5 U.S.C. § 706(2)(A) – The BCNR Reached Conclusions Unsupported by the Evidence of Record.**

96. The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

97. Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

98. Under 10 U.S.C. § 1552(a)(1), the Secretary of a military department "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

99.     Subject to exceptions not relevant to this litigation (promotion and enlistment), "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department," i.e., the BCNR in the case of the Navy. 10 U.S.C. § 1552(a)(1).

100.     Decisions by military correction boards which are unsupported by the evidence of record are arbitrary and capricious: "To put it simply, a decision unsupported by evidence would be arbitrary." *Mitchell v. Del Toro,* 2024 WL 4891906 *1, *4 (D.D.C. November 26, 2024), citing *Ass'n of Data Processing Serv. Orgs. v. Bd. Of Govs. of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984).

101.     When considering the decision of a correction board, a reviewing court is not "empowered to rubber-stamp the Board's decision simply because the supporting evidence may be substantial when considered by itself and in isolation from the evidence that fairly detracts from the Board's conclusion." *Smith v. Dalton*, 927 F.Supp. 1, 4 (D.D.C. 1996). *See also Valles-Prieto v. United States*, 159 Fed. Cl. 611, 618 (2022) (holding that a military correction board "failed to consider the entire record because it cherry-picked which evidence to consider").

102.     Although federal courts are admonished to employ a deferential standard when reviewing decisions of boards for the correction of military records, deference is not warranted where a correction board's reasoning is "utterly illogical…and patently unfair." *Haselwander v. McHugh*, 774 F.3d 990, 993 (D.C. Cir. 2014), quoting *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir. 2012), and *United States v. Morgan*, 393 F.3d 192, 200 (D.C. Cir. 2004).

103.     In such cases, a correction board's judgment "is unworthy of any deference." *Haselwander*, 774 F.3d at 993.

104.     Here, the BCNR reached multiple conclusions unsupported by the evidence of record.

15

105.    The BCNR first concluded that it "did not find the description of the allegation made by [LTJG Hamrick's] daughter to NCIS as a "sexual assault" to be inaccurate as his daughter reported on-going sexual activity dating back two years. This would encompass a period when his daughter was under the age of consent, so the characterization of the allegation as a "sexual assault" was accurate."

106.    However, the NCIS investigation only stated that Nadia had reported an "ongoing sexual relationship from June 22, 2017, through August 22, 2017" – not dating back two years.

107.    Although the investigation did note that LTJG Hamrick's treating physician at JBMDL reported that LTJG Hamrick had sexually assaulted Nadia "over the past few years," LTJG Hamrick's treating physician did not speak with Nadia herself, and his account of the allegations is not supported by Nadia's own statements on the matter, as the NCIS investigation makes clear.

108.    Moreover, NCIS operated as if the alleged period of consensual sexual activity was June 22, 2017, through August 22, 2017 – not two years.

109.    This is made plain by NCIS's conclusion that because Nadia was "17 years old at the time of the alleged incidents, *no UCMJ Article 120 charges* [i.e., rape and sexual assault] *apply*" (emphasis added).

110.    This would not have been true if Nadia had alleged sexual activity dating back two years.

111.    Even worse for the BCNR, there is no evidence in the record that Nadia herself ever alleged ongoing consensual sexual activity for two years.

112.    Instead, it was LTJG Hamrick who stated that Nadia had been assaulting him for two years.

16

113. On October 5, 2017, LTJG Hamrick told his treating physician at JBMDL that Nadia had committed sexual harassment against him over the previous two years.

114. And on October 6, 2017, LTJG Hamrick stated to the Hampton Counseling Center that Nadia had been "assaulting" him over the past two years, and that she attempted to rape him on August 21, 2017.

115. In another treatment note from Hampton Counseling Center dated November 2, 2017, LTJG Hamrick again indicated that he had been molested by Nadia over the course of two years.

116. There was no evidence in the record that Nadia reported a consensual sexual relationship lasting two years – instead, LTJG Hamrick reported that Nadia had been assaulting him for two years, culminating in her attempted rape on August 21, 2017.

117. The BCNR's finding that Nadia "reported on-going sexual activity dating back two years" was unsupported by the evidence of record, and therefore arbitrary. *Mitchell,* 2024 WL 4891906 at *4.

118. So too was the BCNR's conclusion that there was "credible evidence that [LTJG Hamrick] engaged in an inappropriate sexual relationship" with Nadia.

119. While the five pieces of evidence cited in support of this conclusion by the BCNR may be "substantial when considered by itself and in isolation from the evidence that fairly detracts from the Board's conclusion," the BCNR is required to consider all the evidence of record, and the evidence of record fatally undermines each of the BCNR's five pieces of evidence. *Smith*, 927 F.Supp. at 4.

120. First, there were extremely compelling reasons, based on the evidence presented by LTJG Hamrick, for the BCNR to cast a skeptical eye on Nadia's allegations.

17

121. These included Nadia's mental illnesses, traumatic childhood, history of inappropriate sexual activity, history of violence toward LTJG Hamrick and his wife, and strong incentive to lie about the consensual nature of the encounter, given her desire to secure her release from HP BHC.

122. There were also extremely compelling reasons to believe that LTJG Hamrick was telling the truth: namely, that LTJG Hamrick consistently represented to multiple health care providers that Nadia had sexually assaulted him, and that anything that happened between them was not consensual.

123. On this point, the comment of LTJG Hamrick's treating physician – that LTJG Hamrick "acknowledged voluntary participation" in a sexual relationship with Nadia – was not credible, and the BCNR acted arbitrarily and capriciously by relying on this evidence for its conclusion that there was credible evidence LTJG Hamrick had engaged in a consensual sexual relationship with Nadia.

124. The treating physician also recorded that LTJG Hamrick stated he had been "rap[ed]" by Nadia. Rape, under military law, is irreconcilable with voluntary participation in a sexual act. *See* 10 U.S.C. § 120 (Article 120, UCMJ "Rape and sexual assault generally") (a), (b).

125. It was arbitrary and capricious for the BCNR to rely upon the statement of LTJG Hamrick's treating physician at JBMDL that LTJG Hamrick "acknowledged voluntary participation" when LTJG Hamrick also stated to this same physician that he had been "rap[ed]" and that Nadia had assaulted him.

126. Furthermore, the BCNR never discussed the evidence in the record which tended to undermine its conclusion. The BCNR did not discuss LTJG Hamrick's statement at Hampton Counseling Center on October 6, 2017, in which LTJG Hamrick also stated that he had been

18

"raped" by Nadia – one day after LTJG Hamrick said the same thing to his treating physician at JBMDL. *See Smith*, 927 F.Supp. at 4; *see Valles-Prieto*, 159 Fed. Cl. at 618.

127.    The BCNR also did not discuss LTJG Hamrick's statement on November 2, 2017, at the conclusion of his treatment at Hampton Counseling Center, in which he stated that Nadia had molested him.

128.    It was therefore not accurate for the BCNR to state that LTJG Hamrick "provided no evidence other than his denial that his words were inaccurately [sic; the BCNR meant to write "accurately"] recorded by his mental health provider."

129.    In fact, LTJG Hamrick did provide evidence in the form of his contemporaneous statements to other providers, and the nonsensical nature of the treating physician's note. But the BCNR arbitrarily and capriciously failed to consider this evidence. *See Smith*, 927 F.Supp. at 4; *see Valles-Prieto*, 159 Fed. Cl. at 618.

130.    And while the BCNR cited his treating physician at JBMDL's filing of a report with JBMDL FAP as "credible evidence tending to corroborate" Nadia's allegations, this is materially indistinguishable from the BCNR's finding that the treating physician's erroneous finding that LTJG Hamrick had engaged in voluntary intercourse with Nadia.

131.    Other record evidence shows that this concern by the treating physician at JBMDL was unfounded.

132.    The BOI, which considered whether LTJG Hamrick engaged in "Sexual Misconduct or Perversion, Other illegal sexual behavior, including incest illegal under state law as set forth with more particulars in NCIS Investigation # 20OCTl7-NEEA-0140-8XNA dated 13 May 19"; "Violation of UCMJ Article 133 (Conduct unbecoming an officer)" and "Violation of

19

UCMJ Article 134 (Extramarital sexual contact)" unanimously found these charges unsubstantiated and recommended LTJG Hamrick's retention in the Navy.

133. The NCIS investigation as well determined that a violation of Article 133, UCMJ, was not supported by the evidence – presumably because NCIS could not substantiate that any sexual intercourse had taken place, much less consensual sexual intercourse.

134. The BCNR did not credit any of this exculpatory evidence. It only credited the statement of LTJG Hamrick's treating physician at JBMDL. Such selective weighing of the evidence was arbitrary and capricious. *See Smith*, 927 F.Supp. at 4; *see Valles-Prieto*, 159 Fed. Cl. at 618.

135. The BCNR also stated that LTJG Hamrick "did not report the sexual assault allegation when it happened. It was only after his daughter revealed what had happened nearly a week after the event that [LTJG Hamrick] determined that she needed to be institutionalized and he sought mental health treatment for the assault."

136. In support of this point, the BCNR stated that Nadia's sexual assault of LTJG Hamrick "reportedly occurred on 21 August 2017, but [LTJG Hamrick] did not immediately report it or reveal it to his spouse. It was revealed only when the daughter revealed it while attending a church camp, which resulted in the filing of a report with Child Protective Services (CPS)."

137. Even if this is correct, it is not clear why these facts have any probative value – victims of sexual assault like LTJG Hamrick frequently wait to report their experiences, generally out of shame – nor did the BCNR explain why.

138. And the BCNR omitted a key fact that tended to cast doubt on the credibility of Nadia's allegations: both she and LTJG Hamrick initially reported that Nadia had been the aggressor.

20

139.    Not until October 5, 2017, weeks after stating that she had sexually assaulted LTJG Hamrick and after she had been admitted to HP BHC, did Nadia state – for the first time – that she and LTJG Hamrick had consensual sexual relations.

140.    In short: the BCNR ignored that at first, both LTJG Hamrick and Nadia initially reported the incident in the exact same manner. It was only later, when Nadia developed a strong incentive to lie, that her account of the incident changed.

141.    Here too the BCNR cherry-picked which evidence to consider, ignoring evidence favorable to LTJG Hamrick. *see Valles-Prieto*, 159 Fed. Cl. at 618.

142.    Finally, the BCNR noted that "in disputing the medical report that recorded his claim that his daughter actually raped him, [LTJG Hamrick] insisted that no sexual intercourse occurred between them. However, when he sought medical treatment on 28 August 2017, he expressed concern over the possibility of STD exposure. It is not clear why had would have had such a concern a week after the incident if no sexual intercourse occurred, which reasonably raises doubts regarding his credibility."

143.    But it is well-known that STDs can spread by skin to skin contact, even if there is no sexual intercourse. "While some people may think you have to have intercourse to contract an STD, some STDs can spread from skin-to-skin contact, including herpes and human papillomavirus (HPV)." *See* "How STDs Spread – Debunking STD Spreading Myths", Hampton Health Clinic, *accessed at* https://www.hamiltonhealthcenter.com/how-stds-spread/, retrieved on July 15, 2026.

144.    All five pieces of evidence which the BCNR cited to support its conclusion that there was credible evidence that LTJG Hamrick engaged in a consensual sexual relationship with

Nadia fall apart when the contrary evidence submitted by LTJG Hamrick is considered. *See Smith*, 927 F.Supp. at 4.

145.    And the BCNR itself agreed with this characterization of the evidence. Notably, the BCNR concluded that Nadia's allegations of a consensual sexual relationship between herself and LTJG Hamrick were determined to be "unfounded through multiple forums and investigations."

146.    Yet the BCNR also concluded that there was "credible evidence" that LTJG Hamrick had engaged in a sexual relationship with Nadia.

147.    The BCNR never explained how Nadia's claims of a consensual sexual relationship could simultaneously be "unfounded" and "credible."

148.    The BCNR's conclusion here is "utterly illogical," "patently unfair," and thus "unworthy of any deference." *Haselwander*, 774 F.3d at 993.

149.    All in violation of 5 U.S.C. § 706(2)(A).

***Plaintiff's Second Claim***

**Violation of 5 U.S.C. § 706(2)(A)  - The BCNR Failed to Correct Injustice Clearly Present in the Record.**

150.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

151.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

152.    Under 10 U.S.C. § 1552(a)(1), the Secretary of a military department "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

153. Subject to exceptions not relevant to this litigation (promotion and enlistment), "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department," i.e., the BCNR in the case of the Navy. 10 U.S.C. § 1552(a)(1).

154. "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious." *Yee v. United States*, 206 Ct.Cl. 388, 397 (1975), adopted by *Haselwander*, 774 F.3d at 996; *see also Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (Secretary obligated not only to properly determine the nature of any error or injustice, but to take "such corrective action as will appropriately and fully erase such error or compensate such injustice"); *Sanders v. United States*, 594 F.2d 804, 812 (Ct.Cl.1979) (holding that the Secretaries of the military departments, acting through Boards, have not only the "power" but also the "duty" to correct injustice).

155. Here, the BCNR failed to correct injustice clearly present in the record.

156. LTJG Hamrick presented evidence to the BCNR that he had been sexually assaulted by his daughter, and that this assault caused him to lose his promotion to Lieutenant (O-3).

157. LTJG Hamrick provided the BCNR with contemporaneous statements, which he made to multiple health care providers, in which he stated that Nadia had assaulted, molested, and raped him.

158. These statements were corroborated by Nadia's own account of events, in which she admitted to sexually assaulting LTJG Hamrick.

159. Only on October 5, 2017, weeks after stating that she had sexually assaulted LTJG Hamrick and after she had been admitted to HP BHC, did Nadia state – for the first time – that she and LTJG Hamrick had consensual sexual relations.

23

160. Furthermore, Nadia had a compelling motive to lie when she made this accusation.

161. NCIS and LTJG Hamrick's BOI both determined that Nadia's claims that she had engaged in a consensual sexual relationship with LTJG Hamrick were unfounded.

162. So too did Virginia Beach CPS and VBPD, which closed their investigations.

163. No charges, either by the Navy for violation of the UCMJ, or by civil authorities under the laws of the state of Virginia, were ever brought against LTJG Hamrick.

164. Yet despite LTJG Hamrick's complete exoneration, by memorandum dated February 14, 2023, the CNO recommended that the Secretary of the Navy remove LTJG Hamrick's name from the FY 2019 USNR LT AFQOL, because the CNO believed there was credible evidence that LTJG Hamrick engaged in an inappropriate sexual relationship with Nadia, and that this called LTJG Hamrick's moral fitness for promotion into question.

165. The CNO never stated what this credible evidence was, or how it could be reconciled with the administrative proceedings which exonerated LTJG Hamrick, including the results of the BOI and the NCIS investigative findings, after specifically considering whether he had engaged in a sexual relationship with Nadia.

166. Despite all this evidence indicating that LTJG Hamrick – the victim of sexual assault – had suffered an injustice requiring correction as a result of his removal from the FY 2019 USNR LT AFQOL, the BCNR refused to grant LTJG Hamrick his deserved promotion to Lieutenant (O-3).

167. All in violation of 5 U.S.C. § 706(2)(A).

### *Prayer for Relief*

WHEREFORE, Plaintiff prays that judgment be entered:

(a) Holding that when reviewing LTJG Hamrick's application, the BCNR reached a conclusion unsupported by the evidence of record; and,

(b) Holding that, when reviewing LTJG Hamrick's application, the BCNR failed to correct injustice clearly present in the record; and,

(c) Remanding LTJG Hamrick's application to the BCNR for a new review which complies with all applicable laws and regulations; and,

(d) Granting an award of attorney's fees to LTJG Hamrick for the costs of this action, under the Equal Access to Justice Act (28 U.S.C. § 2412(d)(1)(A), (B)); and,

(e) Any other and further relief as the Court may deem, in the circumstances, be just and proper.

Dated July 29, 2026.                          Respectfully submitted,

                                              */s/ Dylan Thayer*
                                              Dylan Thayer
                                              DC Bar No. 90015821

                                              Law Office of Dylan T. Thayer, P.L.L.C.
                                              5350 MacArthur Boulevard, NW
                                              Washington, DC  20016
                                              240-620-9640
                                              dtthayer@thayeradminlaw.com

                                              *Attorney for Plaintiff*

25